NORTON, The SENATOR MIKE. See Cases Nos. 12,666 and 12,667.

NORVELL (HILL v.). See Case No. 6,497.

NORVELL (POSTMASTER GENERAL v.). See Case No. 11,310.

NORWALK, The. See Case No. 7,981.

---

## Case No. 10,354.

### NORWALK BANK v. ADAMS EXP. CO.

[4 Blatchf. 455;[1] 19 How. Prac. 462; 17 Leg. Int. 325; 43 Hunt, Mer. Mag. 710.]

Circuit Court, D. Connecticut. Sept. 19, 1860.

CARRIERS — RESPONSIBILITY FOR GENUINENESS OF NOTE FORWARDED TO DISTANT BANK FOR DISCOUNT.

1. Where J., representing himself to be F., delivered to an express company a promissory note, which had been drawn payable three months after date, and, in that shape, had been signed by F., but which J. had fraudulently obtained possession of and altered to a two months' note, to be taken to a distant bank and discounted, and the proceeds to be returned by the carrier to J., he, at the same time, writing a letter to the bank, subscribed with the name of F., directing the proceeds of the note to be re-

turned by the carrier, and giving it to the carrier to be delivered with the note, and the note and the letter were delivered, and the bank, on the faith of the note, discounted it, and gave to the carrier the proceeds, after deducting out of them the carrier's charge, in a package addressed to F., and the carrier delivered the money to J.: *Held*, in an action brought by the bank against the carrier to recover the amount of the money, that the carrier was not liable.

2. The only undertaking on the part of the carrier was to deliver the proceeds to the person who employed the carrier.

3. The note being, by its alteration, a forged note, not binding on F., and having been delivered to the carrier by the forger, the carrier did not become responsible to the bank for its genuineness.

This was an action originally brought in a court of the state, and removed by the defendants into this court. The case came on for trial before NELSON and SHIPMAN, JJ., and a jury. The facts were as follows: In December, 1859, F. A. Williams, of the city of New York, sent from that city a promissory note, payable three months after date, for $3,000, to the Norwalk Bank, at Norwalk, Connecticut, to be discounted. The cashier returned the note to Williams through the mail, with a letter, stating that the note had too long to run, and that, if he would make it a two months' note, the bank would discount it. That letter was advertised by the post-office in New York. One J. S. Williams called for the letter and obtained it. Acting upon the suggestion of the cashier, he altered the note to a two months' note, and then took it to the Adams Express Company in New York, and, representing himself to be F. A. Williams, gave the note to the company, to be transmitted to the Bank of Norwalk, and directed the company to bring back the proceeds to him. He also wrote a letter to the cashier, requesting him to return the proceeds by the express company, and signed the letter "F. A. Williams." That letter he gave to the express company, who forwarded it to the bank with the note. The bank discounted the note and gave to the express company its proceeds, (less $1.50 express charges,) amounting to $2,971, in a package addressed "F. A. Williams, New York City." The bank took from the company a receipt for the money, and paid the company $1.50 out of the proceeds of the note, for express charges. The money was returned to New York and there delivered by the company to J. S. Williams. On the discovery of the fraud, the bank brought this action against the express company [in a state court in Connecticut][2] to recover the money. [The action was removed by the company into the federal court.][2] The bank claimed that, by the receipt of the $1.50, and by the giving of the receipt for the money, the express company had undertaken to deliver the money to F. A. Williams, to whom the package containing the money was directed. It also claimed that the officers of the bank did not observe

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [From 19 How. Prac. 462.]

the letter accompanying the note; that the express company was guilty of negligence in not discovering the fraud; that it was an insurer of the genuineness of the paper which it carried for collection; and that the bank had acted upon the faith of the directions given by the express company to the bank, to transmit the money for the note through it to New York.

Henry Dutton & Mr. Carter. for plaintiffs. Ralph I. Ingersoll. Samuel Blatchford, and Clarence A. Seward, for defendants.

NELSON, Circuit Justice, after the evidence was in, and the counsel for the plaintiffs had stated the grounds upon which they relied for a recovery, said:

We are of opinion, that the question involved in this case is wholly a question of law, as there is no dispute as to the facts.

It is agreed, at least the facts warrant the conclusion, that both of these parties, the bank and the carrier, are innocent parties, so far as regards this transaction—equally innocent, perhaps; and the question is, which of the two innocent parties must suffer the loss. This will depend upon the application of the rules of law to the admitted facts of the case.

Now, the obligation that is charged upon the carrier by the bank is this, that he received the proceeds of the note and undertook to deliver them to F. A. Williams, the maker of the original note, the genuine F. A. Williams. That is the undertaking set out and charged upon the carrier, and it is the breach of that duty or undertaking upon which is founded the claim to recover the loss. The ground of the action against the carrier is the breach of duty in not delivering the proceeds of the note to the genuine F. A. Williams, according to the undertaking; that the carrier violated his duty in delivering to the fictitious F. A. Williams instead of the genuine F. A. Williams.

It appears. that the carrier had no knowledge of the F. A. Williams who was the maker of the original note, and no knowledge that he was in any way connected with the transaction, and no knowledge that there were any transactions existing between him and the bank. So far as it respects the carrier, as connected with the transaction, F. A. Williams, the original maker of the note, was a perfect stranger. The note was delivered to the carrier by a person representing himself by the name of F. A. Williams. He was in possession of the note, and. when he delivered it to the carrier, representing himself to be F. A. Williams, he, at the same time, wrote a letter directed to the cashier of the bank, subscribing his name, "F. A. Williams," to it. This note and this letter he delivered to the carrier, for the purpose of conveyance to the bank, with a view to the note's being discounted, and with directions to bring back the proceeds, provided the note was discounted. The note was received by

the carrier in the usual way, and the only connection that the carrier had with the transaction was as a carrier of the package. The package, containing the note and the letter, was delivered to the bank. The bank received it and. upon the faith of the note, discounted it, and delivered the proceeds, according to the direction, to the carrier, to be remitted back to the person who employed the carrier.

Now how, upon this state of facts, can a duty, or an undertaking. be predicated on the part of the carrier, to deliver these proceeds to F. A. Williams, the original maker of the note, a stranger to the company. of whom they had no knowledge, and for whom they had transacted no business? He was not their employer. in the transmission of the package to the bank. We are unable to see how, upon this state of facts, a promise or a duty can be raised, either express or implied, that they would deliver the proceeds to a stranger whom they never knew, and who had no connection with the transaction.

It seems to us, that, upon the facts as they appear, the note being delivered to the carrier, accompanied by a letter, by a person representing himself to be F. A. Williams, to be carried to the bank by the carrier, and delivered there, the whole employment being performed according to the undertaking, the bank receiving the paper signed by this man representing himself to be F. A. Williams, discounting it, and returning the proceeds to the company. the only implied undertaking on the part of the carrier, would be an undertaking to deliver the proceeds to the person who employed the carrier. The company must have naturally supposed and believed that the bank and this person who delivered this note to them understood each other. The bank having discounted the note and sent back the proceeds according to the directions, the carrier must have supposed that it was a fair and ordinary transaction, and one in which the bank and this person understood each other. Therefore, the duty raised by implication was to deliver the proceeds to the person who had sent the note to the bank, and who had procured the discount of the note.

As respects this letter, if it is of any importance at all. it seems to us that the most material fact is. that the carrier performed his whole duty in regard to it. The letter was delivered to the bank. Their omission to notice it, whether from neglect or carelessness or misfortune, is certainly not to be charged upon a carrier who has performed his whole duty with respect to it. If, therefore, it is a material fact to influence the court in their judgment, we are bound to assume that the bank had full knowledge of the letter accompanying the note. And. with respect to the endorsement upon the back of the package delivered to the bank, without regard to the purpose for which it was put on. it was the authority that the proceeds should be deliv-

ered to the express company. The letter directing that the proceeds should be returned by the carrier was the authority from the person who wrote the letter.

We are of opinion, therefore, that, on the facts of the case, looked at simply with reference to the application of the rule of law that should determine the rights of the parties. no duty or promise could be raised or implied, on the part of the carrier, to deliver the proceeds to F. A. Williams. the original maker of the note, the genuine F. A. Williams; but that, on the contrary, the only duty or promise that could be raised, upon these facts, against the carrier, was to deliver the proceeds to the person who employed the carrier.

But there is another view of this case, which is independent of the view we have taken, and that is this: After the alteration of the note by the pretended F. A. Williams, it was no longer the note of the genuine F. A. Williams. It was a forged note. F. A. Williams was not under any obligation, by virtue of his signature to that note. As it respected him, it was the same as a note entirely fabricated, for three thousand dollars, payable in two months. It was, therefore, a forged note, delivered by the guilty party to the carrier, to be conveyed by it. as carrier, to the bank for the purpose of discount. That note was taken to and received by the bank, and. on the faith of itself, was discounted. and the proceeds were returned. Now, is the carrier responsible for the conveyance of forged papers? Is the carrier an insurer of the genuineness of all papers that are put into his hands for the purpose of transmission or conveyance? We think not. This would be an alarming doctrine to lay down, as it respects the common carrier. This business, carried on through the medium of the express companies, has become a very extensive business. The common carrier is only a mode of communicating with banks, transmitting notes for discount. and carrying back their proceeds. The carrier has no earthly interest in such transaction, but as a mere vehicle of conveyance, is not connected at all with the party procuring the discount, or with the bank, does not influence the bank to discount the paper, and makes no representations in that regard, and the bank knows that the carrier has no other connection with the paper than as a mere vehicle of conveyance. It would be a very strange doctrine to hold that, under such circumstances, the carrier should be responsible to the bank for the genuineness of the paper—that the mere carrying of it, the mere conveyance of it from the party employing the carrier, to the bank, should operate as a guarantee of the genuineness of all the paper put into the hands of the carrier for conveyance. That principle cannot be sustained. Now. that is this case. The note here was as much a forged note as if it had been fabricated throughout. There was no obligation on the part of F. A. Wil-

liams, the original and genuine maker of it. under the alteration. It must be regarded, therefore, as forged.

We are quite clear that the case has not been made out on the part of the plaintiffs, and that the defendants are entitled to a verdict.

The jury found a verdict for the defendants.