PACIFIC EXPRESS COMPANY v. E. HERTZBERG.

Delivered October 27, 1897.

**1. Common Carrier—Negligence in Delivering Goods to Wrong Person.**

Where a common carrier, such as an express company, delivers goods to a wrong person, who assumes the name of the consignee, without other identification than the statements of such person, and his exhibit of letters, telegrams, etc., addressed to that name, it is liable to the shipper for the value of the goods.

**2. Same—Liability as at Common Law.**

A common carrier's liability in Texas is determined by the common law rule making the carrier liable as an insurer for the goods, where the goods are shipped from one point to another within the State.

**3. Same—Common Law Liability Can Not Be Limited.**

A stipulation in the contract of a carrier for an interstate shipment, limiting its common law liability for the full value of the goods in case of loss, however reasonable, is invalid under article 320, Revised Statutes, providing that common carriers of goods entirely within the body of the State shall not limit or restrict their liability as it exists at common law in any manner whatever.

**4. Same—Estoppel Not Pleaded.**

A carrier can not avail itself of an estoppel against a shipper to recover the full value of goods delivered to the wrong person, on the ground that the shipper understated the value and thereby procured a lower rate, under a plea setting up a provision of the contract (which was void because in contravention of the statute) restricting the liability for loss to a specified sum unless the true value was stated, and providing that such sum was the value agreed upon as the basis of freight charges.

APPEAL from Bexar. Tried below before Hon. J. L. CAMP.

*Franklin & Cobbs*, for appellant.—1. While it is the duty of a common carrier to deliver to the consignee goods received by it for transportation from a consignor, yet there is no duty devolving upon such common carrier to make a delivery to any other person than the one who ordered such goods of the consignor; for no matter what may have been the unexpressed intention of the consignor with reference to the party to whom the goods were intended to be shipped, the true consignee in the eyes of the law is the party who applied for the shipment, and the consignor must be held to have acted upon this application and to have shipped the goods to the party applying therefor, and the duty of the common carrier is fully complied with by a delivery to the party who ordered the goods. And particularly is this true when the party ordering the goods makes no specific misrepresentations, leading the consignor to believe that he is making a shipment to some other person than the real author of the order upon which the shipment is made. Whilst it is the duty of a common carrier to deliver goods received for delivery to the party entitled thereto, such common carrier is not required as a part of such duty to protect a consignor from mistake as to the particular person to whom the consignor intends to make the shipment; the law fixes who such consignee is, independent of the mistakes of the consignor, viz., that the true consignee in law is the party who actually ordered the goods, for he is the only party who could demand of the

carrier a delivery of the goods as against the consignor. Samuel v. Cheney, 135 Mass., 278; Winslow v. Vermont, 42 Vt., 700; Express Co. v. Fletcher, 25 Ind., 492; Rice v. Railway, 50 N. Y., 213; Dunbar v. Railway, 110 Mass., 26; Wilson v. Express Co., 43 Mo. App., 569; Hutch. on Carr., sec. 350.

2. If it be conceded that appellee was entitled to judgment herein, he should not have been allowed to recover, under the proof, any greater sum than the valuation fixed upon the goods at the time of the shipment, viz., $300. Railway v. Maddox, 75 Texas, 300; Express Co. v. Foley, 46 Kan., 457; Balou v. Earl, 17 R. I., 441; Alair v. Railway, 53 Minn., 160; Zouch v. Chesapeake, etc., Co., 36 W. Va., 524; Shackt v. Railway, 94 Tenn., 658; Durgin v. Express Co., 66 N. H., 277; Duntley v. Railway, 66 N. H., 263.

*Clark & Guinn,* for appellee.—1. We object to the premises assumed by appellant's counsel, whereby they lay such stress upon the fact that the impostor brought about this shipment by a written order, and that the goods were actually delivered to the person who actually made the order for same. Because, this fact was unknown to appellant or its agent when it made the delivery, and was therefore not the inducement for the delivery; but the delivery was made strictly upon the clever device and representations of the impostor, who was not named L. A. Kerr, but a fraud, practicing his vocation upon a careless and indifferent and penurious common carrier; a common carrier which would deliver goods of great value to an unknown trickster rather than spend 25 cents to be correct, although it had been paid to deliver to the right person and assumed and undertaken to do so. Express Co. v. Shearer, 43 N. E. Rep., 618; Winslow v. Railway, 42 Vt., 700; 7 Am. and Eng. Encyc. of Law, 567, 568; 50 N. Y., 213; 45 N. Y., 34.

2. Common carriers deliver at their peril, and must take care that it is delivered to the right person, for if the delivery be to the wrong person, either by innocent mistake or through fraud of third person, as upon forged order, they will be responsible, and the wrongful delivery will be treated as a conversion. Railway v. Adams, 49 Texas, 748; Trice v. Miller, 3 Willson, C. C., sec. 440; 2 Id., sec. 342; Hutch. on Carr., secs. 340, 344, 345; 7 Am. and Eng. Encyc. of Law, 567, 568; 50 N. Y., 213.

3. It is a well settled principle that common carriers can not stipulate by mere notice in a slip or otherwise for exemption from responsibility for the negligence of himself or his servants on the ground of public policy, even by express contract to that effect; and if they can not stipulate to that effect, surely they can not defend on that ground. Railway v. Lockward, 84 U. S., 17; 40 U. S., 326.

4. Whenever the loss can be traced to the carrier's negligence, the contract for limited liabilities will not avail him, and will be considered out of the way. Hutch. on Carr., sec. 257. Our statutes state the common liability shall not be limited in Texas. Rev. Stats., art. 320. See also: Railway v. Harris, 67 Texas, 169; Railway v. Ivey, 71 Texas, 414;

Railway v. McGown, 65 Texas, 643; Hutch. on Carr., secs. 249, 250, 260, 262, 263; Railway v. Simpson, 30 Kan., 645; Wescot v. Fargo, 61 N. Y., 542; 12 Am. and Eng. Ry. Cas., 13; 21 Am. and Eng. Ry. Cas., 87, 98, 103; 60 Miss., 1003-1017.

NEILL, ASSOCIATE JUSTICE. — This suit was brought by appellee against appellant to recover the value of the goods described in our conclusions of fact, upon the ground that they were negligently delivered by the express company to a person other than the consignee.

The appellant answered, (1) by pleading the facts found by us, to show that it had been guilty of no negligence, and had in fact delivered the goods to the person who ordered them; and (2) that the goods "were shipped under a certain contract in writing had between appellant and appellee, wherein and whereby it was agreed between them, among other things, as follows: 'That the said Pacific Express Company should not be liable for any loss or damage to the property above mentioned, which shall occur while the same is in the possession of any other carrier, nor for any loss of or damage to said property except the sum of $300 (which is the value of the property agreed upon as the basis of freight charges, and to which charges are graduated), unless the just and true value thereof is otherwise herein stated; that it is further stipulated and agreed in said contract that the defendant shall not be liable for any claim of any nature whatever arising out of the receipt of the property above mentioned, unless such claim is presented in writing within sixty days from the date of loss or damage;' that it was specially agreed in said contract that the value of the property so shipped was $300, and that no claim for damage, as provided in said contract, was made within sixty days, as required by said contract, although defendant company had its agent in San Antonio, where plaintiff at that time resided, and likewise had its agent in the city of Cotulla, all of which was well known to plaintiff."

The cause was tried by the court without a jury, and judgment rendered in favor of the appellee for the sum of $572.40, the aggregate value of the goods, with interest from the time the goods were lost.

*Conclusions of Fact.*—On the date hereinafter mentioned, and for a number of years prior thereto, L. A. Kerr was a well known and reputable citizen of the town of Cotulla, LaSalle County, Texas, in good financial standing. He was then a merchant in that town, doing business in partnership with George Pfeuffer, under the firm name of Pfeuffer & Kerr, and had previously been engaged in business there under the firm name of L. A. Kerr & Co., and he was and had been for years prior to said dates the only person in Cotulla known by the name of L. A. Kerr.

On December 3, 1894, the appellee, E. Hertzberg, was a merchant jeweler doing business in the city of San Antonio and received the following letter:

"COTULLA, TEXAS, 12-2-'94.

*"Mr. E. Hertzberg, San Antonio, Texas:*

"DEAR SIR—I have a special order for a pair of solitaire diamond earrings, each stone to weigh about $1\frac{1}{2}$ carats, to be white, well cut, and perfect. Please send on Mems. several pairs to select from. Those that I do not keep I will return at once.

"Send by express at once, as party wants them by Tuesday. If you can, arrange it so I can make 10 per cent.

"You may also send a set (three) studs, one collar button, and a pair of gent's sleeve buttons, all of the above to be perfectly plain polished gold, 14k.

"I presume the mercantile agencies will be able to inform you as to my standing, etc., etc. Yours respectfully,

"L. A. KERR."

L. A. Kerr did not write or sign this letter, but it was written by a swindler who was unknown in Cotulla, and who will hereinafter be designated an impostor.

Upon the receipt of the letter, the appellee, after inquiring as to the financial standing of L. A. Kerr, of Cotulla, shipped and consigned to him by the Pacific Express Company, a common carrier for hire, one pair of diamond earrings worth $290.30; another pair of diamond earrings of the value of $190; one pair of cuff buttons worth $6; two sets of studs worth $6, and three collar buttons worth $8. When these goods were delivered by appellee to appellant company, the latter executed the former a receipt therefor containing the following stipulations: "That the Pacific Express Company shall not be liable for any loss or damage to the property above mentioned which shall occur while the same is in the possession of any other carrier. Nor for any loss or damage to said property except in the sum of $300, which is the value of the property agreed upon as the basis of freight charges, and to which charges are graduated, unless the just and true value thereof is herein stated."

The goods were safely transported by the appellant, and reached the hands of its agent in Cotulla, who was also the telegraphic operator there. On the same train which brought the goods came an impostor, who went to the company's agent, represented to him that his name was L. A. Kerr, and inquired if a "wire" had been received for him at the office. The agent informed him that a message had been received there for L. A. Kerr and had been delivered to the gentleman of that name who resided there. The impostor then requested to be shown a copy of the dispatch, and upon not being allowed to see a copy, he went to the office of L. A. Kerr and introduced himself to him as L. A. Kerr. Upon being told by Mr. Kerr that his was the same name, he informed Mr. Kerr that he was representing a jewelry house in Chicago, and presented his card, and asked if there was a telegram, and if there was any mail for him. Mr. Kerr had sent the message back to the agent, with the information that it was not for him, and informed the impostor of the fact. About that time

Mr. Kerr's mail was delivered him, and with it were two letters addressed to him, one from appellee and one from Mr. Critzer, of San Antonio. After opening the letters and believing they were not intended for him, Mr. Kerr handed them to the imposter. Then the imposter went back to appellant's office and inquired of its agent for some express package. The agent then had the express package containing the goods shipped by appellee, and two others, addressed to L. A. Kerr, Cotulla. The impostor, upon being asked by the agent if he could be identified, replied he could not, stating that he had just arrived and was an entire stranger in Cotulla. But he gave the agent his card, and told him that one of the packages was from Mr. Hertzberg, and the other from Critzer, and said that he was also expecting a package with money from his wife, stating that there would be a letter and money in it, and that the letter would be signed by his wife. He was then handed by the agent a package, and opened it in his presence and read a letter contained in it. The letter contained a check, which the impostor took out, and after looking at it, said: "I can't use this here. I guess she did not send the money because she could not get it cashed." He then asked for a pen and ink, turned the check over, wrote something on it, and asked for an envelope, which the agent gave him, and he addressed it and sent it off. The impostor had a receipt for this package, which he showed the agent, and the agent then delivered him the package containing the goods of appellee, and the one from Critzer, which also contained jewelry. Appellant's agent had been informed by L. A. Kerr that he was not expecting any packages, and that he had not ordered the goods. The impostor then went to a hotel and registered, went back to the agent, tried to sell him some silverware, jewelry and stuff, remained in Cotulla about five hours, then fled the realm for parts unknown.

Confessedly, appellant's agent made no effort to ascertain from appellee a description of the Kerr to whom the goods were shipped. The rules of the company require the consignee to be identified before an express package is delivered to him. The impostor to whom these goods were delivered never produced a bill of lading, nor any evidence that he was the consignee. But appellant's agent delivered them to him without knowing who he was, or anything more regarding him than what is shown by these findings. The appellee shipped and intended the goods should be delivered to L. A. Kerr.

From the foregoing findings, we conclude that appellant's agent was guilty of negligence in delivering the goods to the imposter.

*Conclusions of Law.*—The findings of the trial court that appellant was negligent in delivering the goods is assigned as error. In this finding we have concurred. Under the stringent rule of the common law a carrier is liable as an insurer for goods committed to its charge for transportation, and nothing but the act of God or the public enemy will excuse him for failure to deliver the goods at their destination to the person to whom he contracted to deliver them—the consignee. It is by this

rigid rule a common carrier's liability must be measured in Texas, where the goods are shipped from one point to another within this State. Rev. Stats., arts. 319, 320. But when the carrier delivers to the person to whom the goods were sent, although by false and fraudulent devices that person personates another, to whom the consignor believed he was sending the goods, the carrier, if acting in good faith and with due diligence, is not liable. Samuel v. Cheney, 135 Mass., 278; Dunbar v. Railway, 110 Mass., 26; Bank v. Express Co., 4 Blatchf., 455. The failure to act in good faith or with due diligence constitutes negligence, and negligence is a question of fact for the jury to determine. The trial judge, who acted in the place of a jury, found that appellant was negligent in delivering appellee's goods to the impostor, and we believe that the evidence is sufficient to sustain the finding. We have a case, then, where the owner of goods has been made the dupe of an artifice which induced him to pursue a course in reference to them which led to the delivery by the carrier to an improper person who was not really entitled to them, but where, in making the delivery, the carrier has been guilty of negligence, and is therefore liable. Hutch. on Carr., sec. 350.

The fifth assignment of error is as follows: "The court erred in finding that plaintiff was entitled to recover the market value of said goods, because it is affirmatively shown by the evidence and found by the court that said goods were delivered to defendant company upon a written contract fixing the value at $300, and that by so fixing said value the plaintiff was charged a less rate by defendant company for transporting said goods than if he had given the real market value, and plaintiff is, therefore, now estopped from recovering of defendant any greater sum than the value placed upon said goods by him when he shipped same, and the said agreement between him and defendant company that said goods were of the value of $300 is reasonable and binding upon the plaintiff." In our statement of the case we have set out fully the appellant's plea, and it shows that a special agreement was relied upon as a defense. No estoppel was pleaded, and there are elements of an estoppel set up in the assignment quoted which are sustained by the evidence which are not pleaded. The plea sets up a contract by which it is sought to limit the liability of a common carrier, for appellant's liability at common law is the value of the goods at their destination, and such value was $505.30. "Common carriers of goods, wares, and merchandise, * * * entirely within the body of this State, shall not limit or restrict their liability, as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, or in any manner whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid." Rev. Stats., art. 320. In view of this arcle, the reasonableness of the stipulation has nothing to do with the matter, for it being a limitation upon appellant's common law liability, it is invalid, without regard to whether it is reasonable or not.

An estoppel not having been pleaded, it can not be made the basis of

an assignment of error on this appeal, and it is unnecessary for us to say whether a common carrier in this State can be relieved of the consequences of its negligence by representations of the shipper.

There is no error in the judgment of the District Court, and it is affirmed.

*Affirmed.*