### J. W. HEAD v. PACIFIC EXPRESS COMPANY ET AL.

#### Decided March 31, 1910.

**1.—Carrier—Limiting Liability—Notice—Express Receipt.**

A carrier being prohibited from limiting its common law liability by notice or by stipulation in its bill of lading (Rev. Stats., art. 320) a statement in the receipt given by an express company that it would not be liable for the loss of jewelry unless separately packed, sealed · and marked as such, would not defeat its liability for a diamond ring packed in an unsealed box, with photographs and letters, not marked as jewelry, and lost in transportation.

**2.—Carrier—Valuable Articles—Disclosure of Contents.**

The shipper was under no duty to disclose to the carrier, unless asked, the contents of the package (a valuable diamond ring). An inquiry whether it contained anything breakable or requiring special attention did not call for such disclosure, a negative answer as to the first inquiry being correct, and the latter one being naturally understood in that connection as referring to liability to be injured by handling with ordinary care.

**3.—Carrier—Valuation of Articles—Limited Liability.**

The consignee is bound by the representations as to the value of a package shipped to him by another by his direction as fully as though the statements were made by himself.

**4.—Same.**

Where the shipper misrepresented the value of the article (a diamond ring worth $250 but valued at $25) the carrier, an express company, was released from its liability as an insurer at common law, but was not relieved from all liability and might be held as an ordinary bailee for its loss by negligence.

**5.—Same—Negligence—Burden of Proof.**

The fact that the property was accepted by the carrier for transportation and lost while in its custody, made a prima facie case of negligence on its part; and it was error, in the absence of other proof of negligence or of evidence by the carrier of due care, to give a peremptory instruction to find for defendant, though it was liable only for negligent loss, and not as an insurer.

Appeal from the County Court of Smith County. Tried below before J. W. Beard, Esq., Special Judge.

*E. B. Price,* for appellant.—Even though Miss James at the time she delivered the package containing the diamond in question to the defendant Wells-Fargo & Co. Express for the transportation to

plaintiff at Tyler, Texas, concealed from the agent of said company the nature of the contents thereof and misrepresented the value thereof, still if the diamond in question was lost, stolen or destroyed while in the care and custody of defendants, the defendants are liable in damages to plaintiff for the fair and reasonable market value thereof. 1 Sayles' Civil Stats., art. 320; Pacific Express Co. v. Hertzberg, 17 Texas Civ. App., 100.

*P. W. Brown* and *Fitzgerald & Butler,* for appellees.—The undisputed testimony showing that Miss James was appellant's agent in delivering the package, and that she deliberately misled appellee's agents both as to the contents and the value thereof; and further, that said agents on account of her fraudulent conduct handled the package in an entirely different manner and method from what they would have handled the same had she truly disclosed its value and contents; and further, that had she truly disclosed its contents and value the rate of charges would have been more than double what was charged, appellees were not liable, and the court did not err in so instructing the jury. Houston & T. C. Ry. Co. v. Burke, 55 Texas, 323, especially page 333; Texas Exp. Co. v. Scott, 2 W. & W., sec. 74; Texas Exp. Co. v. Dupree, 2 W. & W., sec. 319; Southern Pac. Ry. Co. v. Maddox, 75 Texas, 300, especially pages 307, 308; 1 Hutchinson on Carriers (3d ed.), secs. 328 to 333; Southern Exp. Co. v. Wood, 25 S. E., 436; Relf v. Rapp, 37 Am. Dec., 528; Shaacht v. Illinois Cent. Ry. Co., 30 S. W., 742; Humphreys v. Perry, 148 U. S., 627.

WILLSON, CHIEF JUSTICE.—Appellant, residing at Tyler, was the owner of a diamond ring worth $275 or $300, in the possession of a Miss James, at Bowie. Miss James placed the ring, with certain photographs and letters, in a pasteboard box about ten inches in width, fifteen inches in length and one inch in depth, and on November 5, 1908, after she had securely wrapped the box with paper, tied it with twine and addressed it, in compliance with appellant's instructions to do so, delivered it to the Wells-Fargo & Co. Express at Bowie for transportation and delivery to appellant at Tyler. When the package reached appellant the ring was not in it. He brought his suit to recover the value of the ring against the Wells-Fargo & Company Express and the Pacific Express Company, alleging that the ring had "by the carelessness and neglect of the defendants, their agents, servants and employes, been lost, stolen or destroyed while in the custody and care of the defendants." The Pacific Express Company answered, alleging, among other things, that the package when it was delivered to the Wells-Fargo & Company Express at Bowie had the appearance of a package of merchandise, and that Miss James represented the same to be of the value of $25; that said Wells-Fargo & Company Express received the same under the terms and conditions of a written receipt accepted by Miss James for and on behalf of appellant, and constituting a contract covering the shipment, containing, among other things, a recitation that the charge made by the carrier was based "upon a valuation not exceeding $50 unless

a greater value is declared," and stipulating that it should "not be liable in any event for more than $50 unless a greater value is stated herein;" and further stipulating that it should not be liable "for any loss of money, jewelry or valuable papers, unless the same are separately packed, sealed, marked as such and so described herein." Said Pacific Express Company further alleged that charges made by said Wells-Fargo & Company Express were made for itself and said Pacific Express Company, and were "based on the valuation of the article or articles to be transported, and articles of a greater value than $50 are charged for at a higher rate than those of less than $50 in value," and that special precautions were taken to safely transport and deliver money, jewelry and small articles of high value. And said Pacific Express Company further alleged that upon being questioned by the agent of the Wells-Fargo & Company Express at Bowie as to the value of the package when she tendered same for carriage, Miss James "falsely and fraudulently represented to the Wells-Fargo & Company Express that the package contained several articles, none of which were breakable or of special value, and that none of said articles required any special care or attention, and that altogether they were of a value not exceeding $25, thereby inducing the Wells-Fargo & Company Express and this defendant, its connecting carrier, to transport the package by ordinary waybill; that if she had stated that the package contained a diamond ring it would have been sent in the special manner used for transporting jewelry, diamonds and money, and the defendant receiving the same would have charged the sender more than the amount that was charged for the transportation of said package, and that by reason of the false and fraudulent representations as to the value of the articles to be transported if delivered to the Wells-Fargo & Company Express said contract is null and void as to this defendant, and it is not liable in any sum to the plaintiff herein." Said Pacific Express Company further answered that if it was liable at all to plaintiff he was estopped by reason of the representations as to the value of the package made by Miss James as aforesaid from asserting its liability to be for a sum in excess of $25, or if for a greater sum than $25, then for a sum in excess of $50. Said Pacific Express Company further alleged that the stipulation in the receipt or contract aforesaid exempting it from liability for loss of jewelry, unless the same was "separately packed, sealed, marked as such and so described" in said receipt, was reasonable, valid and binding, and that had the package been marked and described as said stipulation required it would have been "kept in a separate package and transported in a safe, while in the care of defendants, its agents and employes, and the train messengers would have signed a special receipt for said package, and in the event anything had happened to said package to damage, injure or destroy the same this company as well as the receiving company could have checked and located the damage or loss sustained thereto, and by reason of the failure to so designate said package and to so send the same, this defendant has been deprived of the right to trace the package in accordance with its rules, which are reasonable, and plaintiff is estopped from

setting up and claiming said package contained jewelry or a diamond ring." The pleadings of the Wells-Fargo Company Express differed little from those of the Pacific Express Company, and need not be here stated.

On the trial the agent of the Wells-Fargo Company Express at Bowie testified that when Miss James presented the package to him for transportation he asked her "what the value of the package was and whether or not there was anything breakable or any reason why the package required special attention," and that she replied "that there were several articles in the package, but that the whole valuation would not exceed $25, and that the package would not require any special attention, as there was nothing breakable in the package." He further testified that he forwarded the package on a "freight waybill;" that he so forwarded it "because it was just a plain, unsealed package with valuation of $25;" that his company shipped all money, jewelry and small packages of high value on "money waybills;" that when a package was to be forwarded on a money waybill he always sealed it up in the presence of the shipper, held it in the safe in his office "until time to take it to the station," when he would take it from the safe and carry it to the station in a haversack and there deliver it to the messenger on the train, taking his receipt for it; that had Miss James informed him (the witness) that the package contained a diamond ring he would have forwarded it on a money order waybill—would have sealed the package in her presence, himself carried it to the train, delivered it to the messenger and informed him that it was a sealed package, and that the messenger would have carried it in the safe in the car provided by the company for such packages. Said witness further testified that the charges demanded of and received from Miss James for transporting the package amounted to twenty-five cents; and that the charges for transporting the package had he been informed that it contained a diamond ring valued at $300 would have been fifty-five cents. Other testimony in the record showed that an article shipped on a money waybill was kept by the company separate from ordinary packages, was carried in a safe, and was checked and receipted for separately by each employe handling it, and that one purpose of this practice was to enable the company to trace same in the event of a loss of the article. The receipt given by the carrier to Miss James recited as a fact that she had declared the value of the package to be $25. Miss James testified that she valued the package at $25 in response to a question asked her by the company's agent as to its value, and further testified as a reason for so stating its value, that she "did not wish anyone to know the contents of the box."

On the ground that the uncontradicted testimony showed that Miss James at the time she delivered the package to the Wells-Fargo & Company Express concealed from that company's agents the nature of the contents of the package and misrepresented its value, the court peremptorily instructed the jury to return a verdict in favor of the express companies. The appeal is from a judgment rendered on a verdict in accordance with such instruction.

*After stating the case as above.*—Appellant's contention is that the court erred in peremptorily instructing the jury to return a verdict in appellee's favor.

At common law common carriers were liable as insurers for the loss of money or other valuables accepted by them for carriage, whether bills of lading were given specifying them or not. Houston & T. C. Ry. Co. v. Burke, 55 Texas, 323; 9 A. & E. R. R. cases, 59; Gulf, C. & S. F. Ry. Co. v. Roberts, 85 S. W., 480; 6 Cyc., 376. Our statute declares that such carriers "shall not limit or restrict their liability as it exists at common law by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, or in any manner whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid." 1 Sayles' Stat., art. 320. The stipulation in the receipt evidencing the contract covering the shipment in question, that the carrier should not be liable for "any loss of money, jewelry or valuable papers, unless the same are separately packed, sealed, marked as such and so described herein," we think must be regarded as an attempt to limit the liability of the carrier as it is at common law, and therefore invalid, because in derogation of the statute quoted above. Pacific Exp. Co. v. Hertzberg, 17 Texas Civ. App., 100, 42 S. W., 795.

If, therefore, the action of the trial court in instructing a verdict for appellees is to be sustained, it must be upon the ground that, the testimony being conclusive that the shipper did not disclose to the initial carrier the fact that a valuable diamond ring was a part of the contents of the package and that she made false representations to that carrier as to the value of the contents of the package, as a matter of law the carrier was discharged from any liability on account of a failure on its part to comply with its undertaking to safely transport and deliver the package. We do not think such a result should be said to follow from a mere failure on the part of the shipper to disclose the fact that the package contained a valuable diamond ring. The law seems to be that a duty to disclose the contents of such a package ordinarily does not rest upon the shipper, in the absence of a specific request on the part of the carrier for information as to such contents. 5 Am. & Eng. Enc. Law, 349. The inquiry of the agent at Bowie was for information as to whether the package contained anything breakable, or anything requiring it to be given special attention. Her reply that it did not contain anything breakable nor anything requiring such attention, "as there was nothing breakable in the package," can not, we think, be said to have been a false statement of the facts. The record does not show the ring to have been "breakable" in the sense that it was so fragile as to be likely to break if the package containing it was handled with ordinary care. The other feature of the inquiry—that is, as to whether the package contained anything requiring special attention—we think Miss James might very well, as her reply indicated she did, have understood to be in line with the other one—that is,

as to whether the package contained anything likely to be injured by mere handling with ordinary care.

As to the effect of the false representations made by the shipper as to the value of the package, the law is not so clear. In the Burke case cited above, the Supreme Court expressed a belief that the statute we have referred to did not "in anywise restrict the operation of the common law rule that when the shipper of valuables practices a fraud on the carrier, either by his acts or omissions, fraudulently concealing the value of the article shipped, the carrier is discharged." We think there is no doubt that the representations made by Miss James must be held to bind appellant to the same extent they would have bound him had he himself made them. Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 13; 6 Cyc., 408. The question then is, had he made them, and so defeated the consummation of a contract creating an obligation on the part of the carrier as such to him, should it be said that as a further effect thereof the carrier was discharged of all liability whatsoever to him? Having possession of the shipper's property, we think it should be said, without regard to the circumstances of such possession, that the carrier was not wholly without duty to the shipper with reference to same. Its possession may have been under circumstances which should be held to relieve it of its liability as an insurer, and yet which should not be held to exempt it from a duty to use some degree of care to prevent the loss or destruction of the property. If not liable as a common carrier, it would, we think, be liable as would be an ordinary bailee of the property for hire, and as such charged with the duty to exercise ordinary care to safely keep and deliver the property. So, we think, if the circumstances were such as to relieve it of its liability as a common carrier, and if it exercised ordinary care toward the property, it should be held to be wholly without liability for injury to or loss of the property; but if it did not use such care, we see no reason why it should not be held liable for the consequences of its failure to use it. That the shipper wronged it ought not to operate as a license to it to wrong the shipper. The answer to the question, in a given case, should therefore, we think, be a qualified one. If, for instance, in the instant case the carrier, in transporting the package, used such care as an ordinarily prudent person would have used to safely transport and deliver such a package as it appeared and was represented to be, and nevertheless lost the ring, it would, we think, be discharged of all liability if it should be made to appear that, by relying upon the truth of the representations, it had been induced to omit precautions it otherwise would have resorted to to safely carry and deliver the package. Suppose, for instance, exercising the care an ordinarily prudent person under the same circumstances would have exercised in handling such a package as the shipper represented and as the one in question appeared to be, the carrier had carried it in its car outside its safe and without fault on the carrier's part it had been destroyed by fire, when had the real nature and value of the package and its contents been disclosed to it same would have been carried in its safe and escaped destruction by the fire; ought it to be held to be liable to the owner in any sum? We think not. In

such a case, having discharged the duty it owed to the owner of the package, notwithstanding his false representations made to it, to use ordinary care in handling his property while in its custody, it would be without fault, and we think justly could say that had it not been misled by the false representations to omit precautions it otherwise would have taken, the ring would not have been destroyed, and that, as it would not have been, the owner, who alone was in fault, should bear the entire loss. Southern Pac. Ry. Co. v. Maddox, 75 Texas, 308; Houston & T. C. Ry. Co. v. Burke, 55 Texas, 327; Pacific Express Co. v. Pitman, 30 Texas Civ. App., 626, 71 S. W., 312; Texas Exp. Co. v. Scott, 2 App. C. C., sec. 74; Shaacht v. Illinois Cent. Ry. Co., 30 S. W., 742; 6 Cyc., 380; 5 Am. & Eng. Enc. Law, 345. But if the carrier in handling the package did not use the care an ordinarily prudent person would have used in handling such a package as it appeared and was represented to be, and if the ring was lost as a result of its failure to use such care, why should it not be held to be liable for the value of the property? Certainly, had it converted the property to its own use, it would be no answer to the owner's suit for its value, to say that he had falsely represented that value when he confided it to the carrier. When instead of its being lost to the owner by being so converted, the property is lost to him as the result of the carrier's failure to use such care as he was bound to use notwithstanding the false representations, why should it be held to be discharged from liability? In such a case its failure to use such care could not be attributed to the false representations, and therefore its conduct could not be said to have been influenced by them. Estoppel can not be invoked to protect a person from the legal consequences of his act or omission, where that act or omission was in nowise induced by the act or omission of the other party relied upon as constituting the estoppel.

If the conclusion reached by us that the representations and conduct of the shipper, while discharging the carrier of its liability as an insurer, did not relieve it of the duty to use ordinary care to safely transport and deliver the package is a correct one, it follows that in not submitting to the jury as an issue in the case a question as to whether appellees used such care or not, and in peremptorily instructing them to return a verdict in appellees' favor, the court erred, and that the error is one requiring a reversal of the judgment. It having been shown by appellant that the package was delivered to and accepted by the carrier for transportation and that it had been lost while in its custody, we think a prima facie case of negligence on its part thereby was established. 6 Cyc., 521-523; Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 13; Galveston, H. & S. A. Ry. Co. v. Efron, 38 S. W., 639; Texas & P. Ry. Co. v. Payne, 15 Texas Civ. App., 58, 38 S. W., 366. Appellant was entitled to have the issue made by the testimony showing such facts and the testimony on the part of appellees tending to show that appellees had used due care submitted to the jury. Pacific Exp. Co. v. Hertzberg, 17 Texas Civ. App., 100, 42 S. W., 795.

The judgment is reversed and the cause is remanded for a new trial.

ON MOTION FOR REHEARING.

After further careful consideration of the record on this appeal, in connection with appellees' motion for a rehearing, we find ourselves still unable to agree with the contention urged, that the case as made by the record showed appellees as a matter of law to be wholly without liability to appellant. The allegation in appellant's petition, as recited in the opinion, was that the ring had "by the carelessness and negligence of the defendant, their agents, servants and employes, been lost, stolen or destroyed while in the custody and care of the defendant." If it was so "lost, stolen or destroyed," we can not agree that appellees nevertheless were without liability to appellant because the latter failed to disclose the nature of the contents of the package and falsely represented its value to be less than it was. Conceding that the contract with appellees as common carriers was void, because of a fraud practiced upon them, the fact remains that they were in possession of appellant's property. Being in possession of it, we can not agree that because of the circumstances of their possession, they owed to him no other duty than to not convert the property to their own use. They still were bailees of the property—for hire, we think; and as such bound to exercise ordinary care towards it. We see no injustice, while holding that appellant should be denied a recovery of any amount, if appellees, exercising due care, were induced by his fraud to omit precautions they otherwise would have taken to safely keep and transport the property, in further holding that they should be held liable for the value of the property if lost as a result of their failure to use such care. If such a ruling when applied to the facts of this or any other case should work a hardship on either of the parties, it will be one which could easily have been avoided by such party. For merely by discharging the duty he owed to the other he could have escaped it.

The motion is overruled.

*Reversed and remanded.*