MISSOURI, K. & T. RY. CO. OF TEXAS v. INTERSTATE CHEMICAL CO.
(No. 6701.)

(Court of Civil Appeals of Texas. Galveston. June 22, 1914. Rehearing Denied Oct. 8, 1914.)

1. SALES (§ 273*) — IMPLIED WARRANTY OF FITNESS—SALES BY MANUFACTURER.

Where a manufacturer sells an article for a particular purpose, so that the buyer necessarily trusts to his judgment, the law implies a promise that the article is reasonably fit and proper for such purpose, but such promise depends upon its use upon the conditions prescribed by the manufacturer, and, when not so used, is not implied.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 772–776; Dec. Dig. § 273.*]

2. SALES (§ 279*) — IMPLIED WARRANTY OF FITNESS—KNOWLEDGE OF BUYER.

Where the buyer's general manager knew that the seller claimed that at least two applications of its secret preparation were necessary to destroy grass and weeds, and did not so inform the buyer's representative charged with its actual purchase, there could be no implied warranty that one application would suffice.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 783–792; Dec. Dig. § 279.*]

3. SALES (§ 358*)—ACTION FOR PRICE—EVIDENCE.

In an action for the price of a secret preparation manufactured by the seller, where it appeared that the buyer's general manager was told by the seller that it would take two applications to kill grass and weeds, evidence that the buyer's subordinate was not so informed, and would not have purchased it had he known that two applications were necessary, was not material.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1049–1055; Dec. Dig. § 358.*]

4. SALES (§ 440*)—WARRANTY—DOCUMENTARY EVIDENCE—PHOTOGRAPHS.

In an action for the purchase price of a secret manufactured preparation to kill grass and weeds, defended on the ground of an implied warranty that one application would be sufficient, photographs shown by the seller to the buyer prior to the sale, labeled to show that more than one application had been made to cause the destruction of the grass and weeds therein shown, were admissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1261–1276; Dec. Dig. § 440.*]

5. APPEAL AND ERROR (§ 1071*)—HARMLESS ERROR—FINDINGS.

The trial court's findings of fact, not material in the view taken of the law of the case, if erroneous, constituted no reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

6. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Error, if any, in the admission of evidence, not material in the view taken of the law of the case, was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by the Interstate Chemical Compa-

ny against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker, & Garwood, of Houston, John L. Darrouzet, of Galveston, and John T. Garrison, of Houston, for appellant. George Q. McCracken and Mart H. Royston, both of Galveston, for appellee.

McMEANS, J. The appellee, Interstate Chemical Company, brought this suit against the appellant, Missouri, Kansas & Texas Railway Company of Texas, to recover $6,-750 which it alleged that the appellant owed it by virtue of a written contract executed between the parties on December 20, 1912. Appellee alleged that it contracted to sell and deliver, and that it did sell and deliver, according to the terms of the contract, 200 barrels of a chemical known as "dinamine," a weed and grass destroyer, at the price of $33.75 per barrel, f. o. b. Galveston, to be used by appellant on its railway right of way; that by the terms of the contract payments were to be made by appellant therefor in four equal parts, one-fourth on the date of delivery, and the balance in three equal payments every 30 days thereafter; that during the month of April, 1912, appellee delivered the dinamine in accordance with the terms of the contract, and applied and distributed the same along appellant's right of way, at the places designated by the officers of appellant and in the quantities desired by them, but that the appellant had failed and refused to pay therefor as it contracted to do.

The appellant answered, alleging that the dinamine was a secret preparation manufactured by appellee, and advertised and sold to appellant for the purpose of killing grass and weeds, and that there was an implied warranty on the part of appellee that the dinamine would kill and destroy weeds and grass; that the same was purchased by appellant with the understanding that it was a grass and weed destroyer, and that the quantity contracted for by it was placed upon its right of way under the supervision of appellee, but that the grass and weeds on the right of way where the dinamine was applied were not materially affected, and that the dinamine did not kill, destroy, or affect the weeds and grass upon the right of way, and that by reason thereof there was a breach of implied warranty, and therefore a failure of consideration.

The case was tried before the judge without a jury and resulted in a judgment for the chemical company, from which the railway company has appealed.

By its propositions under its first, second, and third assignments of error, which sufficiently raise the point, appellant contends that, having purchased from plaintiff dina-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

mine to be used for destroying weeds and grass, nothing being said at the time of purchase as to the number of applications that would be required to kill weeds and grass, there would be an implied warranty upon the part of the manufacturer, the appellee, that the dinamine sold was reasonably fit for the uses and purposes for which it was manufactured and sold, and that, the quantity purchased having been applied under the direction and supervision of the appellee, the manufacturer, and having failed to kill the weeds and grass as applied under appellee's direction, the defendant, as the purchaser, would be relieved from the payment of the purchase price; the purchaser having relied upon the implied promise and warranty of the manufacturer that the dinamine was reasonably adapted and fitted for the purpose for which it was sold.

The evidence shows, and the trial court found, that the appellee is a manufacturer, according to a secret formula, of dinamine, the article sold, and that it held out to the public that two applications would, under normal conditions—i. e., when the railroad was ballasted with rock or gravel—kill grass and weeds. Advertisements to this effect were especially circulated by the appellee among railroad companies.

On December 20, 1912, the following contract was entered into by and between the parties hereto:

"Dallas, Texas, December 20, 1912.

"I hereby agree to furnish your company, the Missouri, Kansas & Texas Railway Co. of Texas, two hundred (200) barrels, or (1,000) one thousand gallons, of our chemical known as 'dinamine,' a weed and grass destroyer, at the price of ($33.75) thirty-three and 75/100 dollars per barrel, f. o. b. Galveston.

"I further agree to furnish our railway power sprinkling cars and crew free of charge, all f. o. b. Galveston, the railway company to transport these cars and crew from Galveston to point where used, and return to Galveston, at their expense.

"I further agree to furnish the dinamine, equipment and crew after fifteen days' written notice from you, it being understood that the railway company accept this material and start work prior to May 1, 1913.

"In addition to the equipment to be furnished by me, I will expect the railway company to furnish a tank car, box car and bunk car, and necessary water cars, together with work train service.

"The Terms: Payments to be in four equal parts, one-fourth on date of delivery, and the balance in three equal payments, every thirty days thereafter.

"[Signed] Interstate Chemical Company,
"By I. F. Orton,
        "Assistant General Manager.
"Accepted: The Missouri, Kansas & Texas Railway Company of Texas,
"By C. A. Tanheiser,
        "Engineer, Maintenance of Way."

Preliminary to the contract the following correspondence was had between appellant and appellee, the former being represented by its general manager, W. A. Webb, and the latter by its assistant general manager, I. F. Orton:

"On Texas Central Railroad, Sept. 5, 1912.
"Interstate Chemical Company, Galveston, Texas:—

"Gentlemen: Your letter of August 31st. Can you give us the approximate cost per mile for using your weed killer and also how many applications it is necessary to make?

"Yours very truly,        W. A. Webb."

"September 9, 1912.

"Col. W. A. Webb, Vice President and General Manager M., K. & T. R. R. Co. of Texas, Dallas, Texas—Dear Sir: Many thanks for your favor of September 5th. It gives me great pleasure to submit you the following: Let us take for granted that the approximate cost per mile for hand-grassing of sixty-seven dollars and fifty cents, for two miles one hundred and thirty-four dollars and fifty cents. The approximate cost for a mile *for two applications, which* is all that will be necessary, is sixty-seven dollars and fifty cents. You save per mile in two years sixty-seven dollars and fifty cents. Aside from this, the vegetation is killed, to stay killed. In addition to this saving you add the approximate saving of 1 per cent. of the ballast which is wasted by hand-grassing (at two dollars per cubic yard rock ballast, three hundred cubic yards per mile—six thousand dollars for five miles). This added to the above saving would make a total of one hundred and eighty-seven dollars.

"Furthermore on an order of one hundred barrels or over of dinamine we will bring our railroad power sprinkling car and crew, f. o. b. Galveston, and make the application free of charge, relieving you entirely of this problem. And as it is to our interest to make a success of it, we believe that the work will be done at less cost and better than if you were to apply it by your own men. The cost of your train crew is approximately one dollar per mile for this treatment. It supplies approximately one and one-half to two barrels per mile. The price per barrel for fifty one hundred barrel lots is thirty-three dollars and seventy-five cents net, f. o. b. Galveston. Again thanking you and giving you our assurance that your orders and instructions will have our immediate attention, we are,

"Very truly yours,    I. F. Orton,
        "Assistant General Manager."

After this correspondence ensued Mr. Webb, appellant's general manager, committed the matter of buying and using the dinamine to his subordinate, Mr. H. F. Anderson, general superintendent of appellant, with authority to use his discretion in the premises, and thereafter Mr. Anderson turned the matter over to Mr. C. A. Tanheiser, appellant's engineer, maintenance of way. Thereafter the contract hereinbefore set out was dictated by Mr. Tanheiser, and duly signed. Nothing was said by either party at the time the contract was executed about the number of applications it would take to kill grass and weeds. Mr. Tanheiser had heard of dinamine as a weed and grass destroyer, had recommended its use to railroads and to the city engineer of the city of Beaumont for such purposes, and had seen places on railroads where the grass and weeds had been killed by its use, but did not know how many applications would be required.

After the execution of the contract the dinamine was applied to the right of way of appellant's railroad between Dallas and

Denison, a distance of about 106 miles, under the supervision and direction of Mr. Orton, appellee's assistant general manager. But one application was made, and this did not kill or materially affect the grass and weeds other than to kill the roots of most of the Johnson grass upon the right of way. The railroad between the points named was ballasted with burnt gumbo, and appellee had no previous experience in destroying grass and weeds with the preparation growing upon tracks where this character of ballast was used. While applying the dinamine Mr. Orton informed Mr. Tanheiser that more than one application would be required to reach the desired result, but a second application was not made or requested by appellant, notwithstanding appellee, through Mr. Orton requested that it be permitted to make a second application. In advertisements of dinamine sent by appellee to railroad companies, including appellant, before the contract in question was made, it was stated that two or more applications were required to effectually kill grass and weeds. One of such advertisements introduced in evidence contained the following:

"Common sense would suggest to any practical mind that it is reasonable to ask for persistence in any work, and not to look for a miracle, as such would be the case could grass like Johnson, Bermuda, Coco, Russian Thistle, etc., be destroyed with one effort."

During the time of making the application Mr. Anderson, the appellant's general superintendent, asked Mr. Orton to guarantee that one application would suffice, but this was refused; but, notwithstanding such refusal of guaranty, the work was permitted to go on.

[1] It is true that where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purposes for which he professes to make it, and for which it is known to be required; but such implied promise is conditioned and dependent upon the use of the article in the manner, quantity, and under the conditions prescribed by the manufacturer, and, when not so used, then such promise is not implied. Seitz v. Brewers, etc., Co., 141 U. S. 511, 12 Sup. Ct. 46, 35 L. Ed. 837.

[2] The evidence, construed most favorably to appellant, was not sufficient, we think, to raise the issue of a warranty that the use of the dinamine under the circumstances and in the manner it was used would kill grass and weeds on appellant's right of way. Certainly it is not sufficient to compel a finding in appellant's favor on that issue. The contract is itself silent as to the number of applications that were required or that should be made, although it was dictated by appellant's representative. At that time the appellant had been informed through its general manager by appellee's representative, and knew, that appellee claimed that at least two applications were necessary to destroy the grass and weeds. The fact that appellant's other representatives, those to whose judgment and discretion the purchase of the dinamine was committed, did not have this information imparted to them by the general manager does not alter the situation. The appellant having been thus informed that two applications were necessary to accomplish a certain result, there could be no implied warranty, in the circumstances, that one application would suffice, and the doctrine of implied warranty is not, therefore, in the case. The assignments are overruled.

[3] The fourth assignment complains of the action of the court in refusing to permit appellant to prove by its witness Anderson that he would not have purchased the dinamine if he had known that it would take two or three applications to kill the grass. Whether he knew it or not, the appellent knew it through information of its general manager, Webb, imparted to him by appellee in response to a direct question. Webb committed to Anderson's judgment the question of whether or not to buy the dinamine, and if he did not disclose to him the facts he knew as to the number of applications it would require, his failure in this regard should not be visited upon appellee to its injury. As the appellant had this information, we think it immaterial that its officer acting for it was not advised of it.

[4] There was no error in permitting the photographs referred to in the fifth assignment to be offered in evidence showing sections of territory which had been treated with dinamine, which showed that the grass and weeds had been destroyed by more than one application, in view of the testimony of the witness Orton that these same photographs had been exhibited to the general manager, Webb, prior to the purchase by appellant of the dinamine, and that these photographs bore a label showing that more than one application had been made to attain the result shown thereby.

[5, 6] The fact findings of the court which are objected to by appellant as not being sustained by the record are not material in the view we take of the law of the case, and, if erroneous, they constitute no reversible error. And so too of the testimony of the witness Lister, the admission of which is complained of in the sixth assignment of error.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.