**FORT WORTH & DENVER CITY RY. CO. v. MOTLEY.**

No. 4453.

Court of Civil Appeals of Texas. Amarillo.

Sept. 16, 1935.

Rehearing Denied Nov. 18, 1935.

552

HALL, Chief Justice.

The appellee, Motley, made a shipment of live stock from Estelline, Tex., to Fort Smith, Ark. This action was instituted July 6, 1933, to recover damages alleged to have been sustained by plaintiff on account of injuries to said live stock.

Following the formal allegations, it is alleged in the petition in substance that on the 11th day of April, 1932, plaintiff was the owner of eight mules, sixty horses and colts, and entered into a written agreement with the appellant for the transportation of said live stock from Estelline to Fort Smith; that he contracted with the appellant for the transportation of said horses and mules in two cars over its line of railway from Estelline to Fort Worth, and thence to destination over the St. Louis & S. F. Railway.

"4. That on said day and date, in compliance with the terms of said contract, said mules, horses and colts were loaded in said two cars and accepted for shipment by the agent of the railway company at its station in Estelline, and said cars were properly loaded in a prudent manner.

"5. That the plaintiff did not accompany said shipment, but the same left said town of Estelline on said date over the defendant's railway, in charge of the defendant, its agents and servants, and thence proceeded a distance of about fifteen miles to the town of Childress, in Childress County. That while said livestock were in Childress the servants of defendant, acting within the scope of their employment and engaged in the discharge of their duties, wrongfully and without the knowledge, approval or consent of the plaintiff, unloaded the said livestock from the said two cars as aforesaid, and reloaded them in three other cars, there being 18 head in one, 23 in another, and 27 in another; that said livestock proceeded on the remainder of the journey to their destination, a distance of several hundred miles, in said three cars.

"6. That such action so done at Childress, by the defendant, acting through its agents and servants, was in violation of the terms of its agreement, and was an act of gross negligence in the handling of such shipment of livestock, and such action would not have been taken by a person well informed and having due regard to the safe and prudent transportation of such livestock.

Thompson & Barwise, of Fort Worth, Morgan, Culton, Morgan & Britain, of Amarillo, and A. S. Moss, of Memphis, for appellant.

Ross Cox, of Hollis, Okl., and Allen C. Grundy and Hamilton & Fitzgerald, all of Memphis, for appellee.

"7. That after such livestock left Childress in said three cars as aforesaid, and thereafter said cars were too lightly loaded and there was too much room in each and all of said cars, and said horses, mules and colts did not have sufficient support from each other, and as a consequence during the remainder of said journey were thrown violently against the floors, walls and doors of said cars and against each other, inflicting various serious injuries to said livestock, and causing very marked depreciation in their market value at Fort Smith, Arkansas, their destination.

"8. That the reasonable market value of said horses, mules and colts at said Fort Smith, Arkansas upon their arrival at their destination was $540.00 less than it would have been had they been transported in two cars as contracted by the defendant, and the said wrongful act of the defendant in adding a third car was the proximate cause of such damage to the plaintiff."

▌ Paragraph 9 sets out an itemized statement showing the depreciation of the market value of the live stock as the result of the injuries alleged to have been sustained. In this list each animal is described, the injury is alleged, and the amount of damages to each such animal is then stated, aggregating $540. These items are all recoverable as general damages. It was not necessary to itemize them in the petition. Missouri, K. & T. Ry. Co. v. Rich, 51 Tex. Civ. App. 312, 112 S. W. 114; Ft. Worth & R. G. Ry. Co. v. Montgomery (Tex. Civ. App.) 141 S. W. 813; Lancaster v. Sayles (Tex. Civ. App.) 234 S. W. 227; St. Louis S. W. Ry. Co. v. Allen (Tex. Civ. App.) 117 S. W. 923.

▌ In the tenth paragraph it is alleged that upon the arrival of the shipment at Fort Smith, plaintiff was compelled to pay freight charges on the shipment in an amount in excess of what he would have paid if the shipment had been continued to destination in the two cars as called for by the contract. The amount of such excess charge which he was compelled to pay was $126.32. This is special damages, and is properly pleaded.

The prayer is that he have judgment for the amount of his debt and damages in the sum of $666.35.

The case was submitted to a jury, and upon the findings judgment was entered for the full amount prayed for, together with interest from the 15th day of April, 1932, at 6 per cent.

In response to special issues the jury found: (1) That the animals were injured while in transit between Childress and Fort Smith; (2) that the act of defendant at Childress in changing the shipment from two cars to three cars was negligence; (3) that such negligence was the proximate cause of the injuries sustained; (4) that the reasonable market value of said animals at Fort Smith, at the time they arrived, was $1,227; (5) that but for the negligence of the defendant the reasonable market value of said animals at Fort Smith would have been $1,893.32.

▌ By the sixth proposition the appellant contends that because plaintiff pleaded specific injuries to specific animals, the court should not have authorized the jury to determine the difference in market value of the animals in the aggregate. That portion of the petition which we have quoted above, considered with the formal parts, is sufficient to sustain the verdict and judgment. The fact that the pleading includes an itemized statement of the nature and amount of damages to each animal would not preclude the plaintiff from recovering the aggregate amount claimed under his allegation of general damages. Tokio Marine & Fire Ins. Co. v. Aldridge (Tex. Civ. App.) 21 S.W. (2d) 547. It is simply a statement of the evidence upon which plaintiff relied to sustain the amount of his recovery. It was not subject to a general demurrer for that reason. 33 Tex. Jur. 438, § 23. It therefore becomes the duty of this court to consider it merely as surplusage. Tandy v. Fowler (Tex. Civ. App.) 150 S. W. 481; Gulf, C. & S. F. Ry. Co. v. Pool, 70 Tex. 713, 8 S. W. 535; Gholson v. Wickwire Spencer Sales Corporation (Tex. Civ. App.) 66 S.W.(2d) 814.

As said in Panhandle & S. F. Ry. Co. v. Andrews (Tex. Civ. App.) 278 S. W. 478, 482: "In Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 32 S. Ct. 205, 56 L. Ed. 516, proof of delivery of interstate shipment to the initial carrier, and of failure to deliver the same to the consignee, raises a presumption of negligence so as to give rise to the liability, imposed by the Carmack Amendment [49 USCA § 20, pars. 11, 12], and casts upon

the carrier the burden of proving that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract; and the carrier cannot contract against liability for negligence in an interstate shipment. Chicago, R. I. & G. Ry. Co. v. Core (Tex. Civ. App.) 176 S. W. 778; Missouri, K. & T. Ry. Co. v. Harriman, 227 U. S. 657, 33 S. Ct. 397, 57 L. Ed. 690."

In Cudahy Packing Co. v. Atchison T. & S. F. Ry. Co., 193 Mo. App. 572, 187 S. W. 149, it is stated that under the common-law rule a carrier's liability is for all loss or destruction or injury to a shipment not occasioned by the act of God or public enemy; and the rule is declared in numerous cases to be that where the loss is not due to the excepted causes, proof of negligence is immaterial, and the carrier cannot escape liability by proving reasonable care and diligence. The effect of the Carmack Amendment, 49 USCA § 20 (11, 12), is to relieve the carrier of liability as an insurer of goods delivered to it for transportation; but a prima facie case is made by showing a delivery in good condition, and subsequent delivery, after transportation, in bad condition. Under the common-law rule, it is never necessary for the shipper to either allege or prove negligence on the part of the carrier in order to recover. Negligence is presumed when the prima facie case stated above is made to the shipper.

■ This being an interstate shipment, the rights of the parties are governed by the federal statutes and decisions. Hovey v. Tankersley (Tex. Civ. App.) 177 S. W. 153; Pacific Express Co. v. Ross (Tex. Civ. App.) 154 S. W. 340.

■ The Carmack Amendment (USCA, tit. 49, § 20, par. 11), provides, "That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law," and the words "existing law" are construed to mean existing federal law and not any state law. Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Chicago, St. P., M. & O. Ry. Co. v. Latta, 226 U. S. 519, 33 S. Ct. 155, 57 L. Ed. 328.

As said in Clay v. New York Central Ry. Co., 224 App. Div. 508, 231 N. Y. S. 424, 427: "This section 20 [49 USCA] applies to the rule of liability, and not to the elements of damage; it provides that the common-law liability, as it stood when the act was passed, could not be changed or limited by contract."

This language is used with reference to the proviso quoted above.

In Harry Ginsberg & Sons et al. v. Wabash R. Co., 219 Mich. 665, 189 N. W. 1018, 28 A. L. R. 518, the effect of the Carmack Amendment is stated thus: "The McGinn Case [Oregon-Washington R. & Nav. Co. v. McGinn, 258 U. S. 409, 42 S. Ct. 332, 66 L. Ed. 689], in no way disturbs numerous former decisions that the Carmack Amendment (U. S. Comp. Stat. §§ 8604a, 8604aa, 4 Fed. Stat. Anno., 2d Ed. p. 499 [49 USCA § 20, pars. 11, 12]) has not changed the common-law doctrine of liability of a common carrier for loss occurring on its own line through its negligence."

The rule of liability, as declared by the federal courts, is appellee's remedy. The plaintiff's pleadings were sufficient to entitle him to recover under this rule, and the itemized account in no degree militates against that right.

"The Federal statute provides 'that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law'. This statute saves to the holder any remedy he may have under the common law as recognized by the Federal Courts. * * * Furthermore, he is not required to elect which one he will hold liable, and if proper allegations are contained in the petition, he is not required to elect whether he will hold the carrier liable under its statutory or common law liability." 8 Tex. Jur. 1034, 1035.

For the reasons stated, we overrule the third proposition also.

■ Over the objections of the carrier, appellant was permitted to introduce notations on the back of the expense bill. The record shows that one Luttrell, a claim agent of one of the carriers which handled the shipment, had inspected the shipment after its arrival at Fort Smith, and noted on the expense bill the particular injuries received by each animal. The plaintiff testified that Luttrell examined the animals and made his notations first in a book, and then copied from the book the notations appearing on the back of the expense bill. The plaintiff said he was present while the original entries were made in the book.

If it be admitted that the introduction of this testimony was error, it is harmless because the testimony, aside from the notations·on the expense bill, is sufficient to support the verdict and judgment.

The plaintiff testified that when the shipment of horses reached Fort Smith they were cut, skinned, tails and manes chewed off, eyes knocked out, some had stiff legs, a number of them were bob-tailed, one had its shoulder badly swollen, a sorrel mare had her right eye swollen and was cut on the knee, a roan mare had a cut below the hock, one white mare had a badly swollen knee, a sorrel mare had an injured knee, a blue mare had one eye badly festered, a brown mare was lame in the left leg, a spotted mare was cut on the right shoulder, a sorrel mare had her left hind leg crippled, several mares had their manes chewed off, a white mare colt was lame in both front legs, and practically all of the animals were bruised up, sore, and stiff.

Plaintiff's witness, Sam Young, testified that he saw the shipment upon its arrival at Fort Smith, and that the animals were "mighty badly bruised up, and it looked like half or two-thirds of them were boogered up, and that the remainder were bruised and skinned."

An examination of the notations on the expense bill will show that there was no substantial difference between the injuries described thereon and as described in the above-quoted testimony. There was no dispute as to the condition of the live stock, and the case was not submitted to the jury for any finding upon these specific injuries. The appellant introduced no proof with reference to the condition of the animals in any way. The jury had the evidence from the mouths of the witnesses, undisputed, and the same facts having been shown by the notations on the back of the expense bill, we think it is harmless.

Error in admitting such testimony is harmless unless it clearly appears that it was prejudicial to the complaining party. Simpson v. De Ramirez, 50 Tex. Civ. App. 25, 110 S. W. 149; Chicago, R. I. & T. Ry. Co. v. Williams, 37 Tex. Civ. App. 198, 83 S. W. 248; Galveston, H. & S. A. Ry. Co. v. Williams, 26 Tex. Civ. App. 153, 62 S. W. 808; Davidson v. Wallingford, 88 Tex. 619, 32 S. W. 1030.

■ We have held that the allegation setting out the specific injuries sustained by the various animals was a surplusage, and an immaterial allegation. If we are correct in so holding, then the admission of the evidence which tended to prove an immaterial allegation is not prejudicial and is not reversible error. Fuller v. El Paso Live Stock Commission Co. (Tex. Civ. App.) 174 S. W. 930; International & G. N. Ry. Co. v. McVey, 46 Tex. Civ. App. 181, 102 S. W. 172; Texas & P. Ry. Co. v. Weatherby, 41 Tex. Civ. App. 409, 92 S. W. 58; Pecos River R. Co. v. Latham, 40 Tex. Civ. App. 78, 88 S. W. 392.

■ It is a fundamental rule that the admission of evidence, if erroneous, is harmless where evidence of the same facts was admitted without objection and was also admissible. By numerous decisions the courts have declared that the admission of immaterial evidence is ordinarily harmless. Cobb v. Bryan (Tex. Civ. App.) 97 S. W. 513; Marshall & E. T. Ry. Co. v. Blackburn (Tex. Civ. App.) 155 S. W. 625; Missouri, K. & T. Ry. Co. of Texas v. Interstate Chemical Co. (Tex. Civ. App.) 169 S. W. 1120.

In Texas Co. v. Giddings (Tex. Civ. App.) 148 S. W. 1142, it is said that the admission of incompetent evidence upon the question of damages will not work a reversal if it does not appear that a consideration of such evidence would have enhanced the verdict.

Without doubt, the extent of the injuries and the amount of damages recoverable were fully and properly established by competent evidence, and the courts have uniformly held that although improper evidence has been admitted, it is harmless and will not result in a reversal. Texas Power & Light Co. v. Bird (Tex. Civ. App.) 165 S. W. 8; Amarillo Nat. Life Ins. Co. v. Brown (Tex. Civ. App.) 166 S. W. 658; Missouri, K. & T. Ry. Co. v. Rogers (Tex. Civ. App.) 156 S. W. 364; Pecos & N. T. Ry. Co. v. Bishop (Tex. Civ. App.) 154 S. W. 305.

This contention is therefore overruled.

■ The further contention is made that plaintiff was not qualified to testify with reference to the circumstances which resulted in the damages to his live stock. He stated that during three years he had been buying cattle and horses and shipping them to the markets; that prior to that time he had bought cattle ever since he was "old enough"; that during the three years in which he had been handling horses and mules he had bought, loaded, and shipped from twenty to twenty-five

cars, and probably one hundred and fifty cars of cattle; that he either loaded or assisted in loading all of these shipments; that he had seen cattle and other live stock which he had loaded when it arrived at its destination, some of which had been shipped the same distance as the shipment in question; that he had previously made shipments under the same conditions, where the same precautions were observed; and that he knew when a car was properly loaded with live stock for shipment. He stated positively that the two cars which he assisted in loading at Estelline were properly loaded, taking into consideration the number and size of the stock. We think the witness was qualified to testify, and overrule the fourth proposition.

By the fifth proposition it is contended that plaintiff did not ask for damages caused by failure to use ordinary care in transporting the live stock, but claimed only such damages as were the proximate result of the negligence of the railway company in taking the live stock out of the two cars at Childress and reloading them into three cars. The testimony shows that after the stock had been loaded into three cars they had too much room and stood so far apart that they did not support each other while the cars were being handled, and that they moved around in the cars to a certain extent, which resulted in the damages claimed. The damages shown were pertinent to the facts alleged.

Injuries resulting on other lines but due to improper loading by the initial carrier are chargeable to the initial carrier, 10 C. J. 103; Davis v. New York, O. & W. Ry. Co., 70 Minn. 37, 72 N. W. 823.

By the seventh proposition it is contended that because the evidence raised the issue that a part of plaintiff's damages may have been caused by reason of improper loading of the animals by some other railroad into the cars in which they were delivered, the court, upon exception being made by defendant to the issue of market value upon that ground, should have required the jury to exclude any such damages, or he should have corrected special issue No. 5 so as to limit it to the negligence pleaded. We think the issues correctly submitted the case made by the pleadings and evidence. No one testified that the animals had been injured to any

extent after they had been unloaded and reloaded by some connecting carrier in other cars. This contention is not supported by the record.

The court's charge was objected to because of a failure to submit the issue of contributory negligence pleaded by the railway company. The company insisted that the cars were overloaded at Estelline by the plaintiff, and because of such overloading several of the animals were down in the cars when they reached Childress, and for that reason plaintiff was guilty of contributory negligence, and was not entitled to recover. It was neither alleged nor shown by the evidence how many of the animals were down in the cars when they reached Childress, nor does the evidence show the extent of the injuries to those injured, nor the value of those that may have died as a result of plaintiff's alleged contributory negligence.

It is a fundamental rule that the court is never required to submit, or is even justified in submitting, any fact controversy to the jury where the issue is not raised by the pleadings and evidence. Speer, Law of Special Issues, 204, § 154. The burden was upon the railway company to plead and prove the facts sustaining its defense of contributory negligence. Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Houston & T. C. Ry. Co. v. Anglin, 99 Tex. 349, 89 S. W. 966, 2 L. R. A. (N. S.) 386; Brown v. Sullivan, 71 Tex. 470, 10 S. W. 288; Houston & T. C. Ry. Co. v. Anglin, 45 Tex. Civ. App. 41, 99 S. W. 897; Lam & Rogers v. St. Louis S. W. Ry. Co. (Tex. Civ. App.) 142 S. W. 977. Wichita Valley Ry. Co. v. Turbeville (Tex. Civ. App.) 269 S. W. 498, holds that contributory negligence is not a complete defense if the damages can be separated.

In Texas & N. O. R. Co. v. Robinson (Tex. Civ. App.) 57 S.W.(2d) 938, 939, Judge Baugh said: "It appears that most, if not all, of the damages complained of occurred to the cattle in two cars, both of which were claimed by the railway company to have been overloaded by appellee. Car No. 62278 was found by the jury to have been so overloaded. In that car four yearlings were killed, one rendered worthless, and four others badly injured. The bill of lading bore the notation over appellee's signature, 'overloaded at owner's risk.' It is not con-

troverted that appellee himself loaded the cattle on the cars at Marble Falls, and not the agents of appellant; and 'that the appellant's agents protested such overloading at the time. The damages claimed by appellee from this one car, according to appellee's testimony, amounted to approximately $250. His total claim was for $897.20. The jury allowed him a total damage of $463.43. In other words, of this total damage it is apparent that under the jury findings part was due to the negligence of appellant, and part to that of appellee. And it is likewise manifest that there is no way to determine what portion of the aggregate damage found was attributable to the negligence of the railway company and what part to that of appellee. Consequently the judgment cannot be sustained."

In the instant case, while it is probable that some damage may have resulted from the alleged overloading of the animals, the extent of this damage is neither alleged nor shown. Two freight conductors who saw the shipment when it reached Childress testified rather indefinitely that in their opinion the fact that some of the animals were down was due to overloading, and that is the extent of the proof. Because the defendant failed to discharge the burden resting upon it to establish its defense, we overrule the ninth proposition.

The original opinion is withdrawn, the motion is overruled, and the judgment is affirmed.