**SOUTHERN PACIFIC COMPANY,**
Appellant,

v.

**George A. PORTER, Appellee.**

No. 6822.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 15, 1958.

Rehearing Denied Jan. 12, 1959.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellee.

PITTS, Chief Justice.

Appellant, Southern Pacific Company, a corporation common carrier by rail, sued appellee, George A. Porter, for unpaid freight charges and expense items in the sum of $4,319.50. Appellee urged a defense of recoupment founded upon allegations to the effect that the originating carrier had wrongfully and negligently failed to heed a diversion request on a shipment made by appellee, as a result of which he suffered damages in excess of the amount

for which he was sued. The action involves an interstate shipment of 290 head of cattle on November 19th and 20th, 1953, from Kinsey, Montana, to the State of California as more fully hereinafter shown. The case was tried before the court without a jury after which the court by judgment entered sustained appellee's defense of recoupment and denied appellant any recovery from which it perfected an appeal. At the request of appellant the trial court made and filed findings and conclusions which are consistent with its judgment rendered.

By stipulation of the parties it was agreed that appellant's right of recovery, except as defeated by appellee's defense of recoupment, was established without controversy; that the cattle were originally ordered shipped by appellee from Kinsey, Montana, to destination point of El Centro, California, but that appellee gave a diversion order to the originating carrier to divert the shipment of cattle from El Centro, California, to Blythe, California; that appellee's diversion order was received by the originating carrier in time to have complied therewith but that such diversion was not accomplished; that the cattle were shipped under the Uniform Live Stock Contract, prescribing the filing of written notice of claim within a nine-month period, but that written notice was not filed by appellee within the nine-month period; and that the copy of the Live Stock Contract attached to appellee's Second Amended Answer and designated as "Exhibits A and B" thereto may be considered in evidence.

Appellant contends in effect that the Uniform Live Stock Contract prescribed as a condition precedent to any damage recovery by appellee the filing within nine months with one of the carriers concerned a claim in writing and a failure of appellee so to do bars his defense of recoupment and precludes a damage recovery by him under the Texas laws which control such matters rather than the Federal laws and that under the laws of Texas a defense of recoupment is not available to appellee. However, appellant pleaded in its original petition in part that it "is required by the statutes of the United States to collect all lawful freight charges in accordance with the terms of the tariffs on file at the time with the Interstate Commerce Commission and it accordingly maintains this suit to recover the same." In its supplemental petition appellant pleaded in part that "The so called Defense of Recoupment relates to a matter which, if it can be asserted at all, must be asserted under the law of Texas by a cross action; * * *" It thus appears from appellant's pleadings that it is relying upon the provisions of the Federal Statutes for its affirmative relief sought but contends that appellee's defense of recoupment must be determined by the laws of Texas. Appellant further pleaded that on or about the dates previously herein shown appellee "shipped cattle from points in Montana to El Centro, California" thus showing the shipment to have been an interstate shipment. Appellant further pleaded that the said cattle reached its line for delivery and that they were delivered by appellant.

▇ Based upon pleadings and stipulated facts and other facts conclusively established, the trial court concluded that the shipment being one of interstate, the law to be applied here is the Federal Statutes and the decisions of the Federal courts construing them, which recognize as a defense the doctrine of recoupment.

We find the following language in 9 Tex. Jur. 266, Sec. 3:

"When Congress has assumed control of interstate commerce by regulating it in any respect, conflicting state laws are superseded. The law then to be applied by the Texas courts is the constitution of the United States, the enactments of Congress passed in pursuance of its power to regulate commerce, and the decisions of the Supreme Court of the United States and the other Federal courts which construe them. Such law governs in all

litigation relating to interstate carriage of passengers and freight * * *".

█ That Congress has assumed control of the remedies available to parties concerning claims made as a result of interstate shipments is clearly shown in the Federal laws and particularly in 49 U.S.C.A. § 20(11) wherein such are discussed from which we quote only as follows:

"*Provided further*, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law: * *"

That provision of the Federal law was construed by this court in the case of Ft. Worth & Denver City Ry. Co. v. Motley, Tex.Civ.App., 87 S.W.2d 551, 554, wherein this court said in part:

"This being an interstate shipment, the rights of the parties are governed by the federal statutes and decisions. Hovey v. Tankersley (Tex.Civ.App.) 177 S.W. 153; Pacific Express Co. v. Ross (Tex.Civ.App.) 154 S.W. 340.

"The Carmack Amendment (USCA, tit. 49, § 20, par. 11), provides, 'That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law,' and the words 'existing law' are construed to mean existing federal law and not any state law. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314, 44 L.R.A. (N.S.) 257; Chicago, St. P., M. & O. Ry. Co. v. Latta, 226 U.S. 519, 33 S.Ct. 155, 57 L.Ed. 328. * *

"The rule of liability, as declared by the federal courts, is appellee's remedy. The plaintiff's pleadings were sufficient to entitle him to recover under this rule, and the itemized account in no degree militates against that right."

Appellant pleaded the terms of the Uniform Live Stock Contract and introduced such in evidence which provides in part:

"(c) As a condition precedent *to recovery,* claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. *Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.*" (Emphases added.)

It appears from the record before us that appellee sought neither recovery nor payment of any sum but has only pleaded a defense of recoupment as against appellant's affirmative action for claims, alleging that the facts supporting his defense arose out of the same transactions which form the alleged grounds for appellant's claim.

█ We think a very similar situation involving similar facts, which arose in Texas rather than in Montana, was determined contrary to appellant's contentions here made in the case of Pennsylvania R. Co. v. Miller, 5 Cir., 124 F.2d 160, 161, 140 A.L.R. 811, certiorari denied, which case both parties here have cited. In that case the court answered the adverse claims of appellant with such force and clarity that we shall quote at length therefrom

even at the risk of making this opinion too lengthy. The court there said in part:

"Appellant contends that the recovery of damages by recoupment should not have been allowed, because the provisions of the bills of lading covering the shipments destroyed the carrier's liability for such damages after two years and one day from the denial of the loss claims, and for the further reason that the claim for damages was barred by the two-year-and-one-day limitation provision of the bills of lading. The portion of the bills of lading relied upon required suits on such claims to be instituted against the carrier within two years and one day after notice in writing of the disallowance of the claim was given, and 'where suits are not instituted thereon in accordance with' these provisions, 'no carrier hereunder shall be liable, and such claims shall not be paid.'

"The crux of this case lies in the distinction between an affirmative action for relief and a defense interposed in reduction or extinguishment of plaintiff's cause of action. The cited portion of the bill of lading is a limitation upon the time within which suits to enforce the recovery of claims may be instituted, and limits the period of existence of an action for recovery against the carrier, but is not a limitation upon a defense by way of recoupment. Appellee's answer set up the loss suffered by reason of the negligence of the carrier, but he sought no damages therefor; rather, he challenged the right of the carrier in equity and good conscience to recover from him on the cause of action alleged.

"The doctrine of recoupment was derived from the civil law, and was adopted as a part of the common law. Under it a defendant is entitled to claim, by way of deduction, all just allowances or demands accruing to him in respect of the same transaction that forms the ground of the action. This is not a set-off or counterclaim in the strict sense, because it is not in the nature of a cross demand, but rather it lessens or defeats any recovery by the plaintiff. It goes to the existence of plaintiff's claim, and is limited to the amount thereof. Being a part of the common law of England in 1840, it was expressly adopted by the State of Texas where this contract was made, and has existed since in unimpaired form in that state.

"Recoupment goes to the foundation of the plaintiff's claim; it is available as a defense, although as an affirmative cause of action it may be barred by limitation. The defense of recoupment, which arises out of the same transaction as plaintiff's claim, survives as long as the cause of action upon the claim exists. It is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced. Though appellee's cause of action to recover affirmatively for the damages he sustained was cut off by the limitation in the bill of lading at the time this action was brought against him, his right to claim damages by way of recoupment remained. The defense was properly asserted and properly sustained. Accordingly, the judgment appealed from is affirmed."

In the case at bar, as in the case cited, we find the same restrictions in the shipping agreement concerning affirmative relief sought and we find here also that appellee did not seek affirmative relief but only interposed a defense which arose out of the same transactions to reduce or extinguish appellant's claims alleged in its cause of action. While it appears that in the Miller case appellee filed his claim as provided for in the contract but in the

case at bar no claim was filed by appellee at any time. However, under the terms of the contract the filing of a claim is only required as a "condition precedent to recovery" and not as to a defense of recoupment and in the case at bar appellee did not seek recovery. In our opinion the filing of the claim in the Miller case was not necessary in support of appellee's defense of recoupment. If appellant's theory of the case here were correct, a litigant may wait until a legitimate defensive claim is barred by the two years and one day provision of the shipping agreement before filing suit in the state court and thus avoid a defense based upon damages resulting in its own negligence. The desirability of uniformity is obviously important particularly when dealing with interstate shipping claims in order to assure the same results under a given set of facts regardless of the forum selected by the litigant who files the suit. The selection of some particular forum should not alter the rights of the parties thereto. In any event the court held in the Miller case that a defense of recoupment, which arises out of the same transaction as the adversary's claim, survives as long as the cause of action upon the claim exists. In our opinion the Miller case just previously cited is controlling as to the similar issues here presented and the same logical reasoning there presented is applicable here. Appellant's points to the contrary are therefore overruled.

■ Appellant further charges in effect that even if appellee's defense of recoupment exists, there is no competent evidence to sustain the trial court's findings on the issues of appellee's damages claimed and in support of its judgment rendered therefor or that the evidence is insufficient to support such findings or that in any event such findings are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. In reply thereto appellee claims in effect that the uncontroverted evidence clearly established that appellee was damaged in an amount exceeding appellant's claims for freight charges by reason of the carrier's negligent failure to divert the shipment of his cattle as requested by him and that no evidence having been offered to the contrary there should be no question about the weight and preponderance of the evidence.

■ It is elementary that in determining the sufficiency of the evidence we must consider only the evidence favorable to the findings, disregarding all evidence adverse thereto and indulging every legitimate conclusion which tends to support such findings.

■ While we find no specific assignment of error complaining about such, it appears from appellant's brief that it seems to contend that the failure to divert appellee's shipment of cattle was the failure of the Milwaukee Line and not appellant, who had neither notice nor knowledge of appellee's request to divert, but under the provisions of 49 U.S.C.A. § 20(11) appellant is liable because the shipment of cattle was transported in part over its line, for which appellant is here seeking freight charges. In construing that provision of the Federal law this court in the case of Panhandle & S. F. Ry. Co. v. Montgomery, Tex.Civ.App., 140 S.W.2d 241, 245, said in part:

"This act as it now exists, we think, clearly implies that 'any common carrier delivering property received for transportation in interstate commerce, and transported, is liable to the owner thereof for any damage caused by such delivering carrier or by the carrier originally receiving it or by any intervening carrier over whose line the property has passed; and, accordingly, the delivering carrier will be held liable thereunder in an action by the shipper for damages caused by the other carriers.'"

Among its findings filed, the trial court found in effect that by reason of the carrier's negligent failure to divert the shipment of the cattle as requested, such was

a proximate cause of the loss appellee sustained in excess of appellant's claim for freight charges and other expenses connected therewith, for which reason it concluded that appellant should not recover in any sum.

The record reveals and it is admitted that the original carrier received an order to divert the shipment of cattle from El Centro to Blythe in time to have done so but failed to do so, however, no showing is disclosed by the record why the carrier failed to do so. The evidence further reveals that the cattle were actually shipped to El Centro, California, a distance of approximately 150 miles from Blythe, but appellee had lost trace of the shipment and, although he made diligent effort to learn, he did not know where his cattle had been delivered until he had a wire from the shipper on December 8, 1953 (18 days after the cattle were shipped) advising him that the diversion to Blythe had not been accomplished but cattle were delivered to El Centro. The evidence further reveals in effect that appellee, George A. Porter, was a cattleman of many years experience and was acquainted with range conditions and the market prices of cattle generally in the vicinity of both El Centro and Blythe, California; that he had originally made arrangements for the care of his 290 head of cattle at El Centro but soon after the shipment of the said cattle was made from Montana, because of disappointments in his arrangements made at El Centro, he ordered the shipment diverted to Blythe where he had made satisfactory arrangements for the care of the said cattle upon arrival there; that because the shipment failed to arrive at Blythe and during the period of time appellee was trying to locate his cattle, he lost his arrangements made to care for them at Blythe; that after appellee learned that his 290 head of cattle had been shipped to El Centro, he cared for them there as best he could until he finally arranged to care for them at Brawley, California, about 20 miles from Blythe, and he hauled the said cattle by truck from El Centro to Brawley at an expense of $800, during which period of time from the delivery at El Centro his cattle had shrunk about 100 pounds per head; that such loss due to shrinkage and other losses sustained in an effort to re-build the cattle for market caused appellee a total loss on the said cattle alone calculated by a computation of figures furnished to be in excess of $7,000 in addition to the expense of $800 spent in moving them by truck to Brawley.

From this and other evidence heard it appears that the shipment of cattle should have been delivered to Blythe within 8 days after shipment, but for 10 days after they should have been so delivered appellee was not advised and did not know where they were; that after he located the said cattle at El Centro, he did what he could for his own best interests, which also minimized the damage resulting from the mis-delivery of the cattle; that if the cattle had been delivered to Blythe as appellee requested, he would have had adequate pasturage there for them, which would have produced a greater gain for them than they actually did have, which gain, together with the increased price, would have resulted in an additional return on appellee's investment much greater than he actually realized on the cattle by reason of the negligence of the shipper and would have prevented the loss he sustained. Having lost that additional return appellee has been damaged in an amount exceeding the freight rates sued for by appellant.

In our opinion the evidence is amply sufficient to support the findings of the trial court about which appellant complains and a careful examination of all of the evidence heard completely refutes appellant's charge that such findings of the trial court are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. We believe the law and the evidence support the judgment. Appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.